IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. PD-1723-12




DAVID EARL BROWN, Appellee

v.

THE STATE OF TEXAS



ON STATE’S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIRST COURT OF APPEALS
HARRIS COUNTY



           Keasler, J., filed a dissenting opinion, in which Keller, P.J., and Hervey,
J., joined.

DISSENTING OPINION 

           This case requires that we confront the issues relating to the intersection of the
principles of voluntary absence and competence to stand trial: does a finding of one preclude
the other? It is a question the majority does not correctly answer. I would hold that, by
voluntarily absenting himself from his trial, David Brown has waived his right to be present
at trial. And as a result of his voluntary absence, Brown cannot successfully challenge the
trial judge’s denial of his continuance and finding that he was competent.
 
           A criminal defendant who is incompetent may not be put to trial without violating due
process.


 “It has long been accepted that a person whose mental condition is such that he
lacks the capacity to understand the nature and object of the proceedings against him, to
consult with counsel, and to assist in preparing his defense may not be subjected to trial.”


 
The constitutional standard for competency to stand trial asks whether the defendant has a
sufficient present ability to consult with his lawyer with a reasonable degree of rational
understanding and whether he has a rational as well as factual understanding of the
proceedings against him.


 
           The requirement that a criminal defendant be competent derives from several
constitutional concepts borne from due process—the presumption of innocence, the right to
assistance of counsel, and the ability to assist in ones own defense.


 “It also has been said
that the requirement of competence is a byproduct of the rule requiring that a defendant be
present at trial, since a trial of an incompetent defendant is virtually a trial in absentia.”


 The
concepts of required presence and competency are constitutionally similar in that, at bottom,
they require the defendant’s presence—both physically and mentally. It has long been the
rule that a defendant may waive his right to be physically present at trial.


 Like the Federal
Rules of Criminal Procedure and the United States Supreme Court before its enactment, we
have held that a defendant may waive his right to be present.


 In an analogous situation to
that presented here, the Supreme Court has held that the defendant loses his right to be
present when he is removed from a trial based upon his disruptive behavior.


 Our statutory
law codifies this long-standing rule. Texas Code of Criminal Procedure Article 33.03 states
in relevant part, that “[i]n all prosecutions for felonies, the defendant must be personally
present at the trial[.]” However, Article 33.03 expressly—and constitutionally


—permits the
trial to continue in instances where the defendant “voluntarily absents” himself during trial
which essentially constitutes a waiver of his rights to be present. It is, therefore, logically
consistent that a defendant may waive his right to be competent at trial. Regardless of the
preferred nomenclature, this case illustrates why waiver principles (and perhaps equity
principles) suggest that a defendant, in certain instances, should not be permitted to present
mid-trial allegations of incompetence or claims regarding a judge’s failure to comply with
Texas Code of Criminal Procedure Chapter 46B.


 Here, the facts upon which Brown
grounds his claims and assertions of incompetence were the result of his own intentional and
voluntary actions, and he should not prevail in his complaints about their consequences.
           The Supreme Court warns that waiver of constitutional rights should not be taken
lightly and should be found only upon an intentional relinquishment of those rights.


 It
follows that a court must determine whether a defendant’s voluntary absence—and by
extension a waiver of his right to be present at trial—was truly voluntary. Because Brown’s
claims below injected his alleged incompetence into his challenge of the judge’s finding that
he voluntarily absented himself, the question becomes whether Brown’s attempted suicide
was the product of an intentional, voluntary action.
           We review voluntary-absence findings under an abuse-of-discretion standard.


 An
appellate court must consider whether the trial judge’s ruling was arbitrary or unreasonable.


 
The evidence presented at the informal competency hearing held pursuant to Article 
46B.004(c),


 in addition to the other evidence the judge could consider, supports the judge’s
finding that Brown was voluntary absent. 
           According to the testimony taken at the hearing, there were no witnesses to the
shooting and when the witnesses testified at the hearing, a thorough investigation had not
been conducted. The responding officer opined that Brown attempted suicide based on the
nature of the wound and the fact that a pistol was lying in the blood-stained grass where
Brown was discovered by neighbors. The officer spoke to a witness who stated that on the
night before the suicide attempt, Brown was “despondent over the way the Court proceedings
were going” and discussed with that neighbor how to handle Brown’s affairs if Brown was
convicted. Brown’s treating doctor at the hospital told another officer that the bullet entered
through Brown’s mouth, went up through his eye and lodged in his brain, but the doctor
could not confirm that the injury was self-inflicted. Brown’s psychiatrist, Dr. Root, testified
that he was treating Brown for depression before his trial began. Although Dr. Root
conceded to not examining Brown after his suicide attempt, Dr. Root stated that suicide
“suggests mental illness.” 
           From the testimony and circumstantial evidence, the judge could have reasonably
found that Brown shot himself. The nature of Brown’s injury strongly suggests that
conclusion. The judge’s finding that Brown’s absence was not a result of incompetence, but
was voluntary, is equally supported. As the State points out in its brief, the judge recently
witnessed Brown testify in his own defense in the guilt phase and withstand cross-examination without any indication that he suffered from incompetence. There is certainly
no evidence suggesting that Brown was incompetent—that he could not understand the
nature of the proceedings against him or assist his counsel in presenting a defense—at any
point before Brown attempted suicide. Brown’s competence was not in question until he
sustained the gunshot wound. Brown’s attempted suicide may be indicative of mental illness,
but it is not dispositive proof that he was legally incompetent or incapable of performing an
intentional and voluntary act. It is equally reasonable to infer that Brown, having determined
that his murder trial was not going his way and facing the prospect of a life sentence,
consciously and with the full understanding of the gravity of his choices decided to take his
own life. The judge’s finding that Brown voluntarily absented himself was not an abuse of
discretion. Several state courts of appeals’ decisions support this conclusion. 
           In Maines v. State, the Eastland Court of Appeals addressed a similar factual
situation.


 At issue was whether the trial judge abused his discretion in failing to stop the
trial and convene a separate jury to consider his competency.


 Maine contended that he was
incompetent during the second day of his trial during the guilt phase due to an overdose of
prescription drugs. After being hospitalized for two days, Maines returned to trial, but his
counsel claimed he was irrational and incoherent and questioned his competency to stand
trial.


 The judge held an informal competency inquiry and found the evidence of
incompetency insufficient. The court of appeals found that, because Maines chose to
overdose on medication, his trial could continue because he voluntarily absented himself.


 
           Similarly, the Fort Worth Court of Appeals held in Bottom v. State that Bottom’s
voluntary choice in ingesting a large quantity of medication with the goal of committing
suicide was a voluntary absence and his trial properly continued without his presence.


 
Without needing to address Chapter 46B’s proper application, the court put it succinctly:
“Because Bottom acted voluntarily and because he cannot avoid trial by intentionally
disabling himself, we overrule his point of error.”


 Without an express claim of
incompetence, the appellant in Heard v. State alleged that his absence from trial was
involuntary because it was the result of intoxication.


 Finding that Heard’s intoxication was
voluntary, the court of appeals held that his trial properly continued.


 
           In an unpublished opinion in Hill v. State, the Fort Worth Court of Appeals again
confronted the issue of a defendant’s ingestion of medication during his trial causing his
absence.


 After surveying the above cases, the court held that, assuming that Hill did
consume drugs that potentially rendered him incompetent—even if that was not the
intentional result—it was a voluntary act, and therefore constituted a voluntary absence at
trial.


 
           A valid finding that a defendant voluntarily absented himself should end the
competency inquiry. A defendant who chooses to end his participation in his own trial
through affirmative, voluntary conduct has waived both Chapter 46B’s statutory procedural
provisions and the substantive rights they protect. The Supreme Court summarized this
position’s underlying principle over a hundred years ago: “It does not seem to us to be
consonant with the dictates of common sense that an accused person, being at large upon
bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his
country and to break up a trial already commenced.”


 The majority arrives at the opposite
conclusion by misreading Drope v. Missouri


 for the proposition that when issues of
competency and voluntary absence arise, a court is required to first address the competency
issue. In reference to Drope, the majority states, “We agree with the United States Supreme
Court that, under such circumstances, logic compels us to first decide whether a defendant
is competent, and only if he is found to be competent, to decide whether his absence was
voluntary.”


 The Supreme Court’s opinion contains no such holding, even by implication.
           Even if a valid finding of voluntary absence does not end the competence inquiry
under Chapter 46B as I suggest, Drope lends little guidance to the resolution of the issues
presented, despite the majority’s reliance upon it. And even if Drope is instructive in some
way on the instant cause, it certainly does not compel the result the majority reaches. Drope
presented easily distinguishable facts from those presented here. The Court held that after
shooting himself during the pendency of his trial, Drope was entitled to a stay of his trial so
that a competency determination could be made.


 However, the Court’s decision was
informed by a record indicating Drope suffered significant mental issues even before his trial
began.


 The Court highlighted the following facts as significant: a psychiatric examination
report brought to the judge’s attention pretrial noted that Drope had “difficulty participating
well,” “had a difficult time relating,” and “was markedly circumstantial and irrelevant in
speech” and contained a diagnosis of borderline mental deficiency and chronic anxiety
reaction with depression; Drope’s wife (and victim of the offense) believed Drope was sick
and needed psychiatric care; Drope had past episodes of irrational actions, like deliberately
falling down the stairs when he did not get his way or was worried about something; Drope’s
irrational conduct of attempting to choke his wife days before she was set to testify against
him in a trial which “depended in large measure on the indulgence of his wife”; and of
course, Drope’s self-inflicted gunshot wound.


 
           The Drope opinion stands broadly for the propositions that (1) a trial judge must be
alert to changing circumstances suggesting a defendant’s incompetence and (2) competency
issues require considering the aggregate weight of all indicia of incompetence. The Court
was clear that there are “no fixed or immutable signs which invariably indicate the need for
further inquiry to determine fitness to proceed[.]”


 The majority incorrectly finds factual
similarity between Drope and the present case. First, unlike Drope, the trial judge was able
to observe Brown’s demeanor in trial, including his testimony on direct and cross
examination, a day before his suicide attempt. Second, the extensive evidence of Drope’s
significant mental illness convincingly suggested that his illness likely had a bearing on his
competency even before his trial began.


 The record before us does not support a similar
conclusion. Unlike Brown’s situation, Drope’s suicide attempt was just the last event in a
long list of evidence pointing to his incompetence and was likely a product of it. Contrary
to Drope’s fact-specific approach, the majority’s opinion treats Brown’s suicide attempt as
a “fixed or immutable sign” that automatically triggers a stay and formal incompetency trial
under Chapter 46B’s provisions.
           I would find that the trial judge did not abuse her discretion in finding that Brown
voluntarily absented himself, and as result was not entitled to a continuance or formal
competency trial. Therefore, remanding for a retrospective competency hearing pursuant to
Chapter 46B is inappropriate. Accordingly, I would reverse the court of appeals’ judgment.
 
DATE FILED: March 19, 2014
PUBLISH